Tova Kahn et al., Respondents-Appellants, v Trans World Airlines, Inc., Appellant-Respondent.

Second Department, October 5, 1981

APPEARANCES OF COUNSEL

*Curtis, Mallet-Prevost, Colt & Mosle (John N. Romans* of counsel), for appellant-respondent.

*Berlack, Israels & Liberman (Rosalind Fuchsberg Kaufman* of counsel), for respondents-appellants.

OPINION OF THE COURT

Gulotta, J.

The question posed is whether the two-year time limitation contained in article 29 of the Warsaw Convention (Convention)[1] is a condition precedent absolutely barring any claims which have not been brought within two years after accrual, or whether it constitutes a Statute of Limitations subject to the infancy tolling provisions of CPLR 208. We hold that the two-year time limitation is a condition precedent to suit, and that it cannot, therefore, be affected by the infancy tolling provisions of the CPLR.

On September 6, 1970 plaintiff Tova Kahn and her infant children, coplaintiffs Judy and Daniel Kahn, were passengers on board Trans World Airlines (TWA) Flight

---

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 US Stat 3000, T.S. No. 876 (concluded Oct. 12, 1929, adhered to by United States, June 27, 1934) (see US Code, tit 49, § 1502).

No. 741 en route from Tel Aviv, Israel to New York City. Following an intermediate stopover in Frankfurt, Germany, the airplane was suddenly hijacked by armed members of the Popular Front for the Liberation of Palestine and flown to a desert near Amman, Jordan. Plaintiffs, along with the other passengers, were subsequently held captive on board the airplane until September 12, 1970.

It is undisputed that the plaintiffs commenced the instant action on or about December 5, 1972 (i.e., more than two years after the hijacking) for damages sounding in negligence arising out of the "physical privation" and "emotional distress" suffered by each of them as a result of his or her ordeal. In addition to the individual claims of each of the plaintiffs, the complaint also asserted a derivative cause of action on behalf of the parent, Tova Kahn, regarding each of the children, as well as a claim for punitive damages based upon the alleged wanton and reckless behavior of TWA in failing to provide adequate security. TWA asserted in its answer, as an affirmative defense, that the claims were barred by the two-year time limitation contained in article 29 of the Warsaw Convention (49 US Stat 3007, 3021), and thereafter moved for summary judgment dismissing the complaint on the ground that the time limitation was a condition precedent which effectively extinguished all claims which had not been brought within the designated two years. By order dated July 27, 1973 Special Term held that the claims of the parent were time barred by article 29 of the Convention, and accordingly granted summary judgment in favor of TWA dismissing those causes of action.[2] As to the infant plaintiffs, however, the court opined that since the Convention itself did not *create* an independent cause of action, an essential ingredient for finding the two-year provision to be a condition precedent was absent (see, e.g., *Romano v Romano,* 19 NY2d 444). Accordingly, the court construed the time limitation in article 29 to be a Statute of Limitations which was subject to the infancy tolling provisions of CPLR 208, and therefore denied summary judgment as to

2. Plaintiff Tova Kahn has abandoned her cross appeal from that part of the order granting summary judgment in favor of TWA as to both of her claims.

each of the infants' causes.[3] TWA appeals from this aspect of the order.[4]

As a preliminary matter, since the case comes before us in the posture of a motion for summary judgment, we note that the Warsaw Convention is a treaty of the United States and, as such, is the supreme law of the land (US Const, art VI, cl 2) of which the courts of New York are required to take judicial notice (CPLR 4511, subd [a]). Moreover, since the "'precise meaning'" of the terms of the Convention "is to be determined by the court as a question of law (CPLR 4511, subd [c]) and cannot be treated as a triable issue of fact" *(Rosman v Trans World Airlines,* 34 NY2d 385, 392), the issue before us is a proper one for summary determination.

There is no dispute between the parties as to the applicability of the terms and conditions of the Warsaw Convention to.the matter under review. The Warsaw Convention is a major multilateral agreement governing certain aspects of the rights and responsibilities of passengers, shippers and carriers involved in international air transportation (see *Rosman v Trans World Airlines, supra,* p 390; see, also, Lowenfeld and Mendelsohn, The United States and the Warsaw Convention, 80 Harv L Rev 497), the primary purposes of which were the establishment of uniform rules relating to air transportation documents (e.g., passenger tickets) and the limitation of a carrier's liability in the event of an accident (see *Block v Compagnie Nationale Air France,* 386 F2d 323, 327, cert den 392 US 905; see, also, *Eck v United Arab Airlines,* 15 NY2d 53, 59). The present controversy stems from an interpretation of article 29 of the Convention (49 US Stat 3021), which reads as follows:

"(1) The right to damages shall be extinguished if an action is not brought within 2 years, reckoned from the date of arrival at the destination, or from the date on which

3. Special Term made no ruling on the fifth cause of action, and the issue was not addressed in the notice of appeal. However, in light of our decision here today dismissing the two remaining negligence causes of action, that cause of action must likewise be dismissed (see *Wegman v Dairylea Coop.,* 50 AD2d 108, mot for lv to app dsmd 38 NY2d 918).

4. For reasons not appearing on the record, service of a copy of the order together with notice of entry was not accomplished until May 16, 1980, nearly seven years after the date of the order.

the aircraft ought to have arrived, or from the date on which the transportation stopped.

"(2) The method of calculating the period of limitation shall be determined by the law of the court to which the case is submitted."

Simply stated, the plaintiffs would have us construe this section as a Statute of Limitations subject to the infancy tolling provisions of CPLR 208, while the defendant maintains that it is a condition precedent to suit which bars any action which has not been commenced within two years after accrual. As has already been indicated, we have concluded that it is the defendant which must prevail.

As Special Term correctly noted, the general rule in New York for distinguishing between conditions precedent and Statutes of Limitation may be stated as follows: if the statute containing the time limitation *creates* the cause of action, then the limitation will generally be regarded as an ingredient of the cause of action and, thus, a condition precedent to suit. If, on the other hand, the cause of action was cognizable at common law or is made such by virtue of another or different statute, then a validly enacted time limitation will generally be regarded as a mere Statute of Limitations, which may, if pleaded, preclude enforcement of the remedy, but does *not* extinguish the right (see *Romano v Romano,* 19 NY2d 444, *supra; cf. Sharrow v Inland Lines,* 214 NY 101; see, also, McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C201:7, pp 62-64; 35 NY Jur, Limitations and Laches, § 8). However, the further question of whether the Convention itself *creates* any causes of action remains unsettled, both in New York State and in the Federal courts.

In holding that the Convention did not "create" a cause of action, Special Term relied primarily upon an early New York case, *Wyman v Pan Amer. Airways* (181 Misc 963, affd 267 App Div 947, affd 293 NY 878, cert den 324 US 882) and a later Second Circuit case, *Noel v Linea Aeropostal Venezolana* (247 F2d 677, cert den 355 US 907). Subsequently, however, the Second Circuit changed its position on the question of whether the Warsaw Convention "created" a cause of action, and in *Benjamins v British Euro-*

*pean Airways* (572 F2d 913, cert den 439 US 1114) specifically overruled both *Noel* and the case upon which *Noel* was based, *Komlos v Compagnie Nationale Air France* (209 F2d 436, revg on other grounds 111 F Supp 393, cert den 348 US 820).

Writing for the majority in *Benjamins (supra),* Judge LUMBARD (who had also written the opinion in *Noel),* noted that an inconsistency had developed within the Second Circuit between *Noel* and another line of Warsaw Convention cases (represented by *Reed v Wiser* [555 F2d 1079, cert den 434 US 922]) in which the court had indicated that the Convention was intended to operate as a *uniform* body of international law and that the *substantive* law of the Convention was intended to be binding upon the various forums. Thus, he stated, "The time has come to examine the question [of] whether our view of the Convention as an internationally binding body of uniform air law [as per *Reed v Wiser, supra]* permits us any longer to deny [as in *Noel]* that a cause of action may be founded [up]on the Convention itself, rather than on * * * domestic law" (572 F2d, at p 917). Although noting that it was not *literally* inconsistent with the principle of "universal applicability" to require that a prospective plaintiff find an appropriate cause of action under the domestic law of the forum, Judge LUMBARD declared (in overruling *Noel)* that such a requirement was inconsistent with the *spirit* of the principle, and that such inconsistency was contrary to the doctrine that "the Convention is to be so construed as to further its purposes to the greatest extent possible" (p 918). In addition, Judge LUMBARD observed that both in Canada and the United Kingdom, the Convention has been more or less consistently construed as "the *source* of carrier liability" (p 919; emphasis supplied). Accordingly, while some of the Federal courts have continued to apply the *Noel/Komlos* line of reasoning (see, e.g., *Dunn v Trans World Airlines,* 589 F2d 408; see, also, Note, The Warsaw Convention — Does It Create A Cause of Action? 47 Ford L Rev 366), the *Benjamins* decision, in our view, significantly weakens the basis of Special Term's decision in the case at bar, particularly in view of the unsettled nature of the New York law in this area.

In *Wyman v Pan Amer. Airways* (181 Misc 963, affd 267 App Div 947, affd 293 NY 878, cert den 324 US 882, *supra),* for example, the trial court, while upholding the applicability of the Convention's limitation of liability to a recovery for the death of plaintiff's testator, observed, *inter alia,* that the Convention created no new substantive rights, and, accordingly, declined to allow an award of interest on the judgment recovered by the plaintiff, since the right to bring the action was premised solely upon a Federal statute (entitled "Death on the High Seas by Wrongful Act", US Code, tit 46, § 761 *et seq.)* which made no provision therefor. However, the affirmance of this decision, without opinion, by both the Appellate Division, First Department, and the Court of Appeals sheds little, if any, light upon whether this line of reasoning was ultimately adopted by those courts (see *Adrico Realty Corp. v City of New York,* 250 NY 29, 44; *Matter of Lincoln Park Lanes v State Liq. Auth.,* 36 AD2d 188, 191, affd 31 NY2d 1009; Cohen and Karger, Powers of the New York Court of Appeals [rev ed], p 31, n 52).

By way of contrast, Special Term, in the later case of *Salamon v Koninklijke Luchtvaart Maatschappij* (107 NYS2d 768, 773, affd 281 App Div 965, mot for lv to app den 282 App Div 683), specifically sustained a cause of action for the death of plaintiff's testator on the basis of article 17 of the Convention (the article setting forth a carrier's liability in the event of death or bodily injury to a passenger), stating, without reference to *Wyman v Pan Amer. Airways (supra),* that "[i]f the Convention did not *create* a cause of action in Art. 17, it is difficult to understand just what Art. 17 did do" (107 NYS2d, at p 773; emphasis supplied). The First Department, in affirming the court's determination sustaining this cause of action, again did not set forth any statement of reasons therefor.

Following the decisions in *Wyman* and *Salamon (supra)* and the uncertain state in which they left the issue of whether the Warsaw Convention *created* a cause of action, a number of cases arose in New York which specifically addressed the nature of the time limitation contained in

article 29 of the Convention, and, thus, are of particular importance herein.

In *Egan v Kollsman Instrument Corp.* (44 Misc 2d 348, affd on other grounds 26 AD2d 633, revd on other grounds 21 NY2d 160, cert den 390 US 1039), for example, the plaintiffs moved to dismiss the several defenses which had been pleaded by the defendants, including an affirmative defense that the action was barred pursuant to the time limitation set forth in article 29. The defendants had asserted, *inter alia,* that article 29 was a condition precedent to suit rather than a Statute of Limitations, and, accordingly, that the plaintiffs, whose earlier action in Federal court had been terminated in a manner other than by "voluntary discontinuance, a dismissal * * * for neglect to prosecute * * * or a final judgment upon the merits", could not avail themselves of the six-month "savings" clause in CPLR 205 (subd [a]). Special Term, declining to construe article 29 as a condition precedent, found CPLR 205 to be applicable, and accordingly struck the affirmative defense, stating (pp 350-351):

"By its second defense, sought to be stricken, the defendant claims that article 29 of the Convention, which bars suits not timely commenced, is actually a condition precedent to the right of suit rather than a time limitation for such suit. It cites several cases which involve statutory actions to recover compensation wherein the courts hold that these time periods do constitute a condition precedent rather than a limitation. They so hold because the right of action created by the statute and incorporated therein set the time limitation as a condition precedent to the maintenance of the suit and is thus quite independent of practice remedies. *(Hill* v. *Board of Supervisors of Rensselaer County,* 119 N.Y. 344; *Johnson* v. *Phoenix Bridge Co.,* 197 N.Y. 316.) Also cited is *Balzano* v. *Port of N.Y. Auth.* (232 N.Y.S. 2d 776) which similarly upheld the time limitation as a condition precedent. Here, again, the same statute which contained the limitation also created the remedy so that the limitation was in effect a restriction on the remedy created by the statute.

"In the present instance, however, the Warsaw Convention does not create the remedy as the remedy is actually

contained either in the common law or, as in the case at bar, the Decedent Estate Law of New York, which does not provide any time limitation. The two-year limitation of time set out in article 29 of the Convention cannot therefore be construed as a condition precedent, and since the saving clause of CPLR 205 is applicable to this suit which was timely commenced following termination of the action in the Federal court, the second affirmative defense must be stricken."

Thus, while neither discussing the matter nor citing to the decisions in *Salamon* or *Wyman (supra),* the *Egan* court appears to have adopted the *Wyman* rationale regarding the source of the causes of action governed by the Convention, and, based upon the foregoing, applied the general rule of construction (see *Romano v Romano,* 19 NY2d 444, *supra)* to interpret article 29 as a Statute of Limitations. Notably, however, this issue was not presented on either of the ensuing appeals.

Subsequently, in *Bergman v Pan Amer. World Airways* (32 AD2d 95) the issue before the First Department was whether article 29 of the Convention was a provision excluding or limiting liability within the meaning of article 3 (49 US Stat 3001, 3015), which bars a carrier from availing itself of those protective provisions where there has been a failure to provide adequate notice on the ticket of the Convention's limitation of liability (see *Egan v Kollsman Instrument Corp.,* 21 NY2d 160, *supra).* Plaintiff argued that although the action had been commenced beyond the two-year limitation period provided for in article 29, the longer State Statute of Limitations should apply because the notice which had been printed on the ticket was illegible. The court, while agreeing that by virtue of the illegible ticket the exclusion contained in article 3 was applicable to the action, concluded, *inter alia,* that article 29 was *not* a provision excluding or limiting liability within the meaning of article 3, and accordingly granted the defendant's motion to dismiss on the ground that the two-year period of limitations was applicable. In so doing, the court predicated its decision on several grounds, but prominent among them was its observation that a Statute of Limitations never excludes or limits liability but merely

renders an existing liability unenforceable, so that, "[i]f by virtue of any state of facts the statute is tolled or waived, the liability is unaffected" (32 AD2d, at p 97). Thus, although the court did not expressly consider the question, it freely appears that it implicitly construed article 29 to be a Statute of Limitations rather than a condition precedent to suit, since a condition precedent, being an element of the cause of action, operates to limit or exclude liability, and (as in the case before us) cannot be tolled. As previously noted, however, the court did not rely exclusively upon its interpretation of article 29 to reach its conclusion, but also examined the "internal evidence" of the Convention to find that the "limitation" provision sought to be excluded by article 3 in the event of a failure to give adequate notice was article 22, which sets forth the monetary limitation on liability, and not article 29 (32 AD2d, at p 97; accord see *Jaffee v British Overseas Airways Corp.*, 34 AD2d 527, mot for lv to app dsmd 27 NY2d 796; see, also, *Molitch v Irish Int. Airlines,* 436 F2d 42).

There is, however, a conflicting line of cases which has construed article 29 to be a condition precedent to suit.

In *Bochory v Pan Amer. World Airways* (1956 US & C Avi Reps 209, NYLJ, April 23, 1956, p 7, col 7 [Supreme Ct, NY County], affd 3 AD2d 1009), the issue before the court was identical to the one at bar, i.e., whether the two-year time limitation contained in article 29 is subject to a toll for infancy. The court therein set forth the general rule of construction for distinguishing between Statutes of Limitation and conditions precedent (i.e., whether the statute which contains the time limitation also creates the remedy), but expressed its belief that "the [foregoing] distinction is always fine and sometimes tenuous, and [that] a court can, if strongly motivated, make a statute of limitations out of what had been a limitation on the right on rather slight grounds *(Sharrow* vs. *Inland Lines, Ltd.,* 214 N.Y. 101), with the result that an adjudication on this question may always be open to some question" (1956 US & C Avi Reps, at p 210). The court then went on to hold that article 29 constituted a condition precedent based upon the "peculiarly appropriate language that is used" (p 210), the history of the article, and the number of holdings

to the effect that similar language constituted a condition precedent to suit.

*Bochory* was thereafter relied upon in *Sackos v Compagnie Nationale Air France* (NYLJ, May 24, 1965, p 17, col 3 [Supreme Ct, NY County]), where the trial court dismissed a cause of action governed by the Convention on the ground that it was time barred by article 29. The court opined that even if the plaintiff's allegation of insanity at the time of accrual was assumed to be true, the latter, standing alone, would not affect the outcome, as the time limitation contained in article 29 of the Convention could not be tolled by infancy or other disability, citing *Bochory v Pan Amer. World Airways (supra)* (see, also, *Miller v Trans World Airlines,* NYLJ, Sept. 25, 1973, p 17, col 1).

From the foregoing brief survey, it is readily apparent that the New York courts have experienced some difficulty in attempting to determine whether article 29 of the Warsaw Convention should be construed as a condition precedent to suit or as a Statute of Limitations. This difficulty, in turn, appears to stem in large part from the repeated attempts to analyze the issue almost exclusively in terms of the general New York rule for distinguishing between the two types of time limitations as set forth in *Romano v Romano* (19 NY2d 444, *supra),* and from the further difficulty which has been encountered in attempting to answer the equally unsettled question of whether the Convention operates to "create" an independent cause of action (see *Romano v Romano, supra).* In taking this approach, the courts, in our view, appear to have overlooked a primary resource for interpreting the Convention (i.e., the intent of its draftsmen), which, we believe, conclusively answers the question of the proper construction to be placed upon article 29, and does so without delving into the vagaries of attempting to determine whether the Convention itself "creates" any causes of action.

As noted earlier, the Warsaw Convention, as a treaty of the United States, is the supreme law of the land *(Rosman v Trans World Airlines,* 34 NY2d 385, 392, *supra;* US Const, art VI, cl 2), and, thus, to whatever extent there may be a conflict, it is the latter which overrides and supplants any contrary body of local (i.e., State) law (see

*Ross v Pan Amer. Airways,* 299 NY 88, 96, cert den *sub nom. Froman v Pan Amer. Airways,* 349 US 947; *Garcia v Pan Amer. Airways,* 269 App Div 287, affd 295 NY 852, cert den 329 US 741; 87 CJS, Treaties, § 19). Moreover, since it is the proper interpretation of the treaty itself which is ultimately at issue, it is well that we look to the proceedings underlying the Convention in order to ascertain the precise meaning of article 29.

It is well established that when interpreting a treaty, a court should endeavor to construe its terms liberally in order to give effect to its evident purposes (see *Rosman v Trans World Airlines, supra,* p 395; see, also, *Reed v Wiser,* 555 F2d 1079, 1088, cert den 434 US 922, *supra),* and that wherever possible a treaty should be given a meaning consistent with the shared expectations of the contracting parties (see *Day v Trans World Airlines,* 528 F2d 31, 35, cert den 429 US 890; *Maximov v United States,* 299 F2d 565, affd 373 US 49). In order to ascertain the intent of the parties as to a particular term or provision, recourse may, of course, be had to the legislative history of the treaty, including the negotiations and diplomatic correspondence of the parties with respect to the subject matter under review (see *Block v Compagnie Nationale Air France,* 386 F2d 323, 336-337, cert den 392 US 905, *supra; Warshaw v Trans World Airways,* 442 F Supp 400, 408; 87 CJS, Treaties, § 13), and it is by just such an analysis that we have been led to the conclusion that the intent of the delegates regarding article 29 of the Convention was that the two-year time limitation incorporated therein was intended as an absolute bar to suit, and that it was not to be made subject to the various tolling provisions of the laws of the forum States.

The Warsaw Convention was the result of two international conferences on private aeronautical law (Conference Internationale de Droit Prive Aerien) which were held in Paris in 1925 and in Warsaw in 1929. At the Paris conference, a committee (Comite Internationale Technique d'Experts Juridiques Aeriens — "CITEJA") was appointed to prepare the preliminary draft of the Convention which was presented to the delegates at the Warsaw conference, and which provided, in pertinent part, as follows:

"Article 28 [later Article 29]

"The liability action shall be instituted within a period of two years counted from the arrival at the destination or from the date on which carriage stopped.

"The method of calculating the period of limitation, as well as the causes of suspension and interruption of the period of limitation, shall be determined by the law of the court having taken jurisdiction." (R.C. Horner and D. Legrez, Minutes of the Second International Conference on Private Aeronautical Law, p 267, hereinafter Minutes).

The Minutes reveal that during the Warsaw conference, an amendment to article 28 (now article 29) was proposed by the Italian delegation which would have replaced the period of limitations specified in paragraph one with "a plea in bar". In introducing this proposed amendment, the conference reporter, Mr. De Vos, stated the following:

"This amendment returns a little to the discussion which we have just had. It's a question of facilitating the task of the carrier, that is to say, to put aside protest which could arise after too long a time.

"The proposal of the Italian Delegation consists in letting Article 28 fall, and in replacing it by a plea in bar; that is to say, *that after two years any action dies and is no longer admissible [sic].*

"The consequence of this proposal, if it were adopted, would be the elimination of the second paragraph: 'the manner of calculating the period of limitation, as well as the causes for suspension and interruption of the period of limitation, shall be determined by the law of the forum court'.

"I am quite in favor of this proposal." (Minutes, p 110; emphasis supplied.)

In explanation, Mr. Giannini (the chief Italian delegate) stated that the "interruption of the period of limitation, varies with the country, and [therefore] it is very difficult [under the present draft] for the shipper * * * to know when the interruption or the suspension [period] begins" (Minutes, p 110). Under the proposed amendment, however, the matter would become far simpler, for *"if two years*

*after the accident no action has been brought, all actions are extinguished"* (Minutes, p 111; emphasis supplied).

The French delegate, Mr. Ripert, stated in response to Mr. Giannini that he was not at all opposed to the Italian proposal, but that "it is aimed, in the final analysis, only at the causes of suspension of the period of limitation, which must disappear" (Minutes, p 111). He pointed out that it was still necessary to indicate that it was the law of the forum which would determine how, within the period of two years, the court would become seized of the action, since the manner in which lawsuits are commenced varies according to Nation. He stressed, however, that he allied himself with the Italian proposal, and was very much of the opinion that the interruption of the period of limitations must be eliminated (Minutes, p 111). The Italian proposal was thereafter adopted, with the question of its exact wording being reserved (Minutes, p 113).

At a subsequent session, the conference reporter again addressed the Italian proposal, noting that it sought to eliminate the second paragraph of the original draft of article 28 (now article 29) and replace it with language stating that "The liability action must be instituted under pain of forfeiture, within a period of two years" (Minutes, p 171). The reporter further stated that upon the proposal of the French delegate, it was decided that the total elimination of the second paragraph was not called for, and that it would be better to retain an indication that the court having jurisdiction of the action would determine the precise moment at which the action had been commenced for purposes of the two-year limitation. The following language was thereupon adopted (Minutes, p 219):

"(1) The liability action shall be brought, under penalty of forfeiture, within a period of two years counted from the date of arrival at the destination or from the day when the aircraft should have arrived, or from the end of carriage.

"(2) The method of calculating the period shall be determined by the law of the court having taken jurisdiction".[5]

---

5. It should be noted that the foregoing language differs in some detail from the translation of article 29 appearing in the United States Statutes-at-Large (49 US Stat 3000, 3021) and quoted *ante* at page 699. The intent, however, is not affected thereby.

Based upon the foregoing, it is abundantly clear that the delegates to the Warsaw Convention expressly desired to remove those actions governed by the Convention from the uncertainty which would attach were they to be subjected to the various tolling provisions of the laws of the member States, and that the two-year time limitation specified in article 29 was intended to be absolute — barring any action which had not been commenced within the two-year period. Moreover, it is equally clear from the delegates' discussion that the only matter to be referred to the forum court by paragraph 2 of the present article 29 was the determination of whether the plaintiff had taken the necessary measures within the two-year period to invoke that particular court's jurisdiction over the action. An obvious example of the need for such a provision is the difference between the method of commencing an action in the New York State courts as opposed to the Federal courts. Thus, in New York, depending upon the forum chosen, the plaintiff in an action governed by the Warsaw Convention must either effect service upon the defendant (CPLR 304) or file a complaint in the Federal District Court (Fed Rules Civ Pro, rule 3 [in US Code, tit 28, Appendix]) within the time limited by article 29, i.e., two years.

Accordingly, regardless of whether or not the Convention itself "creates" any causes of action, it is readily apparent that the time limitation incorporated in article 29 was intended to be in the nature of a condition precedent to suit, and that it was never intended to be extended or tolled by infancy or other incapacity. In addition, such an intent on the part of the draftsmen is fully consistent with one of the Convention's over-all purposes — that of establishing "a uniform body of world-wide liability rules to govern international aviation" *(Reed v Wiser,* 555 F2d 1079, 1090, cert den 434 US 922, *supra).* In the case at bar, the tort claims of the infant plaintiffs were thus not timely interposed, and the defendant's motion for summary judgment should have been granted *in toto.*

The order of the Supreme Court, Westchester County, should therefore be modified by deleting the provision denying that branch of the defendant's motion which was for summary judgment as to the plaintiffs' second and third

causes of action and said motion should be granted in its entirety. In light of this determination plaintiffs' fifth cause of action, for punitive damages, should likewise be dismissed. As so modified, the order should be affirmed, with $50 costs and disbursements payable to the defendant.

DAMIANI, J. P., O'CONNOR and THOMPSON, JJ., concur.

Order of the Supreme Court, Westchester County, dated July 27, 1973 modified, on the law, by deleting the provision denying that branch of the defendant's motion which was for summary judgment as to the plaintiffs' second and third causes of action and said motion is granted in its entirety. As so modified, order affirmed with $50 costs and disbursements payable to the defendant, and the complaint is dismissed.