Dennis PENNINGTON & Mary Lou
Pennington, Plaintiffs,

v.

BRITISH AIRWAYS, Defendant.

No. CIV.A.02–7125.

United States District Court,
E.D. Pennsylvania.

June 18, 2003.
Order Amending Decision July 11, 2003.

Robert W. Price, Law Office of Robert M. Donovan, Blue Bell, PA, for Dennis Pennington, Mary Lou Pennington, Plaintiffs.

Anthony U. Battista, Condon & Forsyth LLP, New York City, Joseph J. Hamill, Spector Gadon & Rosen, Philadelphia, PA, for British Airways, Defendant.

## MEMORANDUM

ROBRENO, District Judge.

Plaintiffs Dennis and Mary Lou Pennington have brought this action against British Airways to recover for injuries that Mr. Pennington allegedly sustained on July 13, 2000 as a result of not receiving appropriate medical treatment from British Airways personnel after he suffered a severe stroke during an international flight. Before the court is British Airways' motion to dismiss the case as time barred.

British Airways contends that the instant action, commenced by the plaintiff by writ of summons in the Philadelphia County Court of Common Pleas on July 15, 2002, must be dismissed as untimely under the Warsaw Convention's two-year statute of limitations. Pennington counters that the procedural rules of the Pennsylvania state courts, in which the case was originally filed, control. Under the Pennsylvania rules, "[w]henever the last day of any [limitations] period shall fall on a Saturday or Sunday, ... such day shall be omitted from the computation," Pa. R. Civ. P. 106(b), and that, because July 13, 2002 was a Saturday, the action was timely filed on the following Monday, July 15, 2002.

The issue before the court is one of treaty interpretation. Specifically, if the Warsaw Convention's two years statute of limitations is applied literally, the claim is barred. If the state procedural rules are applied in calculating the last date on which the complaint could be filed under the Warsaw Convention, the complaint would be timely. For the reasons that follow, the court concludes that Pennsylvania Rule of Civil Procedure 106(b) applies in the instant case, that the Penningtons' claim is therefore timely, and that defendant's motion to dismiss should be denied.

## I. FACTS

■ Plaintiffs Dennis and Mary Lou Pennington commenced the instant action on July 15, 2002 by writ of summons in the Philadelphia County Court of Common Pleas. British Airways timely removed the case to federal court on the basis of diversity of citizenship.[1] The gravamen of

---

1. British Airways has also asserted that removal was proper because the Warsaw Convention, implicated by the facts of this case, preempts state law causes of action, and therefore confers on this court federal question jurisdiction for purposes of removal. The court does not agree that removal would have been proper on this basis, however, because it is a well settled principle that state law causes of action are not removable on the basis of a federal defense, such as preemption. *See Bracken v. Matgouranis*, 296 F.3d 160, 163 (3d Cir.2002) (citing *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908)); *see also Jacob v. SmithKline Beecham*, 824 F.Supp. 552, 554 (E.D.Pa.1993) (Robreno, J.) (noting that the well-pleaded complaint rule "applies with full force even when the defense involved

the Penningtons' complaint, ultimately filed in federal court, is that Mr. Pennington sustained severe injuries on July 13, 2000 when he suffered a stroke during a British Airways international flight and was not supplied appropriate medical treatment by British Airways personnel. The Penningtons have asserted that British Airways' alleged refusal to supply immediate medical care to Mr. Pennington or to train its employees adequately in immediate medical care "was negligent," or, in the alternative, constituted "willful misconduct that should exclude any limit of liability that the defendant will seek to avail;" Mrs. Pennington seeks recovery for loss of consortium.

## II. DISCUSSION

### A. Applicable Law

The Warsaw Convention [2] applies to "all international transportation of persons, baggage, or goods performed by any aircraft for hire." Note following 49 U.S.C. § 40105. Recognizing "the advantage of regulating in a uniform manner the conditions of ... the liability of the carrier," *id.*, the Convention seeks "to accommodate or balance the interests of passengers seeking recovery for personal injuries, and the interests of air carriers seeking to limit potential liability." *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 170, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999).

■ To this end, the Warsaw Convention employs a hybrid scheme of strict liability and damage caps. Article 17 of the Convention establishes carrier liability

for "damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage ... took place on board the aircraft or in the course of any of the operations of embarking and disembarking." Note following 49 U.S.C. § 40105. In practical effect, therefore, Article 17 "subjects international carriers to strict liability for ... injuries sustained on flights connected with the United States." *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 552, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). At the same time, the Convention limits the amount of damages recoverable under an Article 17 strict liability theory to $75,000.[3] A carrier that injures a passenger through "wilful misconduct," however, is prohibited from invoking the $75,000 damage cap. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1488–89 (D.C.Cir.1991).

■ The Warsaw Convention's hybrid liability scheme is both preemptive and comprehensive in sweep. State law claims "are barred by the Warsaw Convention, because the Convention provides the exclusive cause of action for injuries suffered during international flights." *Waters v. Port Auth. of N.Y. and NJ*, 158 F.Supp.2d 415, 422 (D.N.J.2001) (citing *Tseng*, 525 U.S. at 161, 119 S.Ct. 662). Accordingly, once a court determines that the action is one for personal injury within the scope of the Warsaw Convention, it must dismiss all state law claims as preempted, and

is one of federal preemption"). Therefore, removal was properly predicated on the existence of diversity, rather than federal question, jurisdiction.

**2.** Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1936) *reprinted in* note following 49 U.S.C. § 40105.

**3.** Agreement Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol, Agreement CAB 18900, approved by order E–23680, 13 May 1966 (docket 17325), *reprinted in* Lawrence B. Goldhirsch, The Warsaw Convention Annotated: A Legal Handbook 367 (2000).

allow a plaintiff to proceed only on claims cognizable under the Convention.

█ The Penningtons do not seriously contest British Airways' claim that the Warsaw Convention applies under the circumstances of this case.[4] In this context, British Airways has argued that the Penningtons' complaint, which is styled in negligence and wilful misconduct, and which seeks attorneys' fees, costs, punitive damages, and damages in excess of $75,000 must be dismissed because it fails to state Warsaw Convention, as opposed to state law, claims. The court agrees. However, mindful that the complaint provides ample notice of the claim to British Airways, and clearly relates an injury in connection with an accident that occurred during international flight, as required under Article 17, pursuant to Federal Rule of Civil Procedure 15(a), the court will grant the Penningtons leave to amend their complaint to state causes of action under the Warsaw Convention.

### B. The Operation of Article 29

#### 1. *The Penningtons' complaint is timely under Article 29 of the Warsaw Convention.*

Article 29 of the Warsaw Convention provides in relevant part that "[t]he right to damages shall be extinguished if an action is not brought within 2 years, reckoned from the date of arrival at the destination, or ... from the date on which the transportation stopped." Note following 49 U.S.C. § 40105. Article 29 further states that "[t]he method of calculating the period of limitation shall be determined by the law of the court to which the case is submitted." *Id.*

Given this context, British Airways argues that the Pennsylvania rule that prevents limitations periods from ending on weekends and holidays provides, in effect, for equitable tolling under local law, a practice not allowed under Article 29. *See, e.g., Redl v. Northwest Airlines, Inc.,* 22 Fed.Appx. 652, 653–54, 2001 WL 1335653, at *1–2 (8th Cir.2001) (no equitable tolling for time suit against international carrier was pending in state court); *Husmann v. Trans World Airlines, Inc.,* 169 F.3d 1151, 1154 (8th Cir.1999) (no equitable tolling for the time of the pendency of an airline's bankruptcy filings); *Fishman v. Delta Air Lines, Inc.,* 132 F.3d 138, 144 (2d Cir.1998) (no equitable tolling of Article 29 to allow for injured child to reach age of majority); *McCaskey v. Continental Airlines, Inc.,* 159 F.Supp.2d 562, 580 (S.D.Tex.2001) (no tolling for time of fraudulent concealment). For the reasons that follow, the court does not agree.

A court faced with the task of interpreting a treaty begins with an examination of the text itself. *See Tseng,* 525 U.S. at 167, 119 S.Ct. 662. Because the court's responsibility is "to give the specific words of the treaty a meaning consistent with the shared expectations of the contracting parties," *Air France v. Saks,* 470 U.S. 392, 399, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985), the treaty's negotiating and drafting history may then be used as aids to interpretation, as can the postratification understanding of the contracting parties. *Zicherman v. Korean Air Lines Co.,*

---

4. Indeed, it appears that plaintiffs' counsel attempted to style the complaint ultimately filed in this action as one under the Warsaw Convention. He acknowledges, for example, that "[d]efendant's refusal to supply immediate medical care or any medical care was willful misconduct that should exclude any limit of liability that the defendant will seek to avail." Complaint ¶ 14. Thus, the language of the complaint appears to track the language of Article 25 of the Warsaw Convention, providing that wilful misconduct on the part of a carrier removes the otherwise applicable $75,000 damage cap. *See* Note following § 40105.

*Ltd.,* 516 U.S. 217, 226, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996). With these principles in mind, the court turns to an examination of Article 29.

■■■■ First, a plain meaning reading of Article 29 suggests that Pennsylvania Rule of Civil Procedure 106(b) constitutes a "method of calculating" consigned to "the law of the court to which the case was submitted." Note following 49 U.S.C. § 40105. According to Black's Law Dictionary, to "calculate" is "[t]o compute mathematically ...." Black's Law Dictionary, 255 (Rev. 4th ed., 1968). By its own terms, Pennsylvania Rule of Civil Procedure 106(b) provides for a "computation of time," and establishes nothing more than a counting procedure, *see id.* at 360 (defining "computation" as "[t]he act of computing, numbering, reckoning, or estimating"). Therefore, the Pennsylvania rule falls within the scope of the treaty's language.

By contrast, tolling, the practice barred under the Warsaw Convention, requires that a party "show facts which remove [the statute of limitations'] bar of the action." *Id.* at 1658. The fundamental difference between calculation and tolling was confirmed in *Fishman v. Delta Air Lines, Inc.,* 132 F.3d 138, a case in which the Second Circuit considered whether the phrase "method of calculating" was broad enough to allow for the equitable tolling of a Warsaw Convention claim until the time that an injured child reached the age of majority. *See id.* at 144. In determining that equitable tolling was not encompassed within the ambit of the phrase, the court

emphasized the procedural nature of the term "method of calculating," which, on its narrowest reading, "merely ... invoke[s] the power of the forum court to determine *whether the plaintiff accomplished the filing within the limitation period,* a question that may involve ... the proper party or agent for receipt of process, and the means of service-in other words, matters bearing on when an action has been 'brought.'" *Id.* (emphasis supplied).

Second, the legislative history of the Warsaw Convention suggests that the Warsaw Convention delegates did not intend for Article 29 to displace local procedures, bearing on when a case has been brought, but rather to prevent fact-dependent interruptions of unpredictable length in the running of the limitations period.[5] The Italian delegate, for example, questioned, "Given the application of *lex loci,* what's going to happen? The period of time, in order that there be interruption of the period of limitation, varies with the country, and it is very difficult for the shipper ... to know when the interruption or suspension begins." Second International Conference on Private Aeronautical Law, October 4–12, 1929, Warsaw, Minutes, 110 (Robert C. Horner & Didier Legrez, trans., 1975). Georges Ripert, the French delegate, responded as follows:

> I am not at all opposed to the Italian proposal, but it is aimed, in the final analysis, only at the causes of suspension of the period of limitation, which must disappear. It must all the same be

---

**5.** Although "[t]he cardinal purpose of the Warsaw Convention ... is to 'achiev[e] uniformity of rules governing claims arising from international air transportation,'" *Tseng,* 525 U.S. at 170, 119 S.Ct. 662 (quoting *Eastern Airlines v. Floyd,* 499 U.S. 530, 552, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991)), the Warsaw Convention does not require lock-step uniformity in those areas where the treaty states, as in Article 25, that a matter is to be deter-

mined "in accordance with the law of the court to which the case is submitted." *See Brink's Ltd. v. South African Airways,* 93 F.3d 1022, 1030 (2d Cir.1996) (explaining that Article 25 of the Warsaw Convention defers to the law of the forum jurisdiction for a determination of what constitutes "wilful misconduct" by an air carrier, with the result that air carriers will be exposed to different rules of liability in different courts).

indicated that it's the law of the forum court which will fix how, within the period of two years, the court will be seized, because in all the countries of the world suits are not brought in the same way. *Id.* at 111. Thus, local procedures other than those providing for unpredictable interruptions in the running of the statute of limitations were preserved.

Given a plain meaning reading of the text of the Warsaw Convention, and the available drafting history, the court concludes that, because the Penningtons' case was originally submitted to the Pennsylvania state courts, Pennsylvania Rule of Civil Procedure 106(b) provides the method of calculating the running of the two-year statute of limitations contained in Article 29. Given the operation of that rule in the circumstances of this case, the court concludes that the instant complaint was timely filed on July 15, 2002.

### 2. The Penningtons' complaint is not rendered untimely by amendment.

Federal Rule of Civil Procedure 15(c) provides in relevant part that "[a]n amendment of a pleading relates back to the date of the original pleading when … the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R.Civ.P. 15(c)(2). In its final argument in favor of dismissal, British Airways contends that, should the court grant the Penningtons leave to amend their complaint to make it conform to the letter of the Warsaw Convention, the amended complaint would be untimely under Article 29, on the theory that Federal Rule of Civil Procedure 15(c) provides for tolling of the type disallowed under the Warsaw Convention. The court does not agree that this result obtains under the particular circumstances of this case.

In support of its position, British Airways cites two cases, *Motorola, Inc. v. MSAS Cargo Int'l, Inc.,* 42 F.Supp.2d 952 (N.D.Cal.1998) and *Split End Ltd. v. Dimerco Express,* No. 85 Civ. 1506, 1986 WL 2199 (S.D.N.Y. Feb. 11, 1986), both of which are factually distinguishable from the case at hand. The plaintiff in *Motorola* was a company that had arranged for the shipment of its goods through a cargo company, MSAS, which, in turn, engaged an international airline to transport the goods. *Motorola,* 42 F.Supp.2d at 953. The goods were picked up in a damaged condition at the MSAS warehouse on February 12, 1996, and Motorola sued MSAS for the damage on January 30, 1998, within the Warsaw Convention's two-year statute of limitations. *Id.* On March 16, 1998, MSAS filed a third-party complaint for indemnity and contribution against the airline, and on April 2, 1998, well outside the two-year statute of limitations, Motorola filed an amended complaint adding the airline as a defendant. *Id.* The issue in *Motorola* was, therefore, whether Motorola had failed to bring its claim against the airline, which had not been a party to the original action, within the Warsaw Convention's two-year time limit. *Id.* At 954. Similarly, the issue in *Split End* was "whether a third-party action for indemnification and/or contribution brought pursuant to the Warsaw Convention must *also* be brought within the two-year period set forth in Article 29." *Split End,* 1986 WL 2199, at *4 (emphasis supplied).

Although each of these cases contains sweeping language regarding Rule 15(c) and tolling, the real evil at issue in *Motorola* and *Split End* was the fact that the plaintiff in each case was attempting to use the complaint amending mechanism of Rule 15(c) in order to commence an entirely new and separate suit against a party otherwise protected by the bar provided by the Warsaw Convention's two-year statute of limitations. In practical effect,

therefore, the plaintiff's use of Rule 15(c) in both *Motorola* and *Split End* did work an actual tolling of the statute of limitations. This is not so here, because, for the reasons set forth above, the Penningtons' original complaint against British Airways was timely filed. The only effect of allowing the Penningtons to amend their complaint at this stage of the litigation is to allow them to bring their pleading into conformity with the requirements of the Warsaw Convention. Granting leave to amend has no prohibited tolling effect in this case.

## III. CONCLUSION

For the foregoing reasons, the court will deny British Airway's motion to dismiss plaintiffs' complaint on the basis of untimeliness. The court will, however, dismiss plaintiffs' original complaint for failure to state a claim, but will grant plaintiffs leave to amend their complaint to state a claim under the Warsaw Convention.

An appropriate order follows.

1. Defendant filed a motion to dismiss the original complaint in this action on the grounds that the complaint was untimely filed under Article 29 of the Warsaw Convention. In the alternative, the defendant also argued that, in the event that the complaint also failed to state a cause of action under the Warsaw Convention, Article 29 would bar the court from granting the plaintiffs leave to cure that defect by amending the complaint under Fed.R.Civ.P. 15(c).

The court denied defendant's motion to dismiss insofar as it was based on the claim that the plaintiffs' complaint was time-barred. However, insofar as the defendant argued that the complaint failed to state a cause of action under the Warsaw Convention, defendant's motion to dismiss was granted. Although the plaintiffs acknowledged the Warsaw Convention as the source of this court's federal question jurisdiction over the case, and the language of the complaint loosely tracked that of a cause of action under the Warsaw Convention, the complaint sounded in state law negligence and state law willful misconduct, and sought punitive damages,

*ORDER*

**AND NOW,** this **18th** day of **June, 2003,** it is hereby **ORDERED** as follows:

1. Defendant's motion to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6) (doc. no. 8) is **DENIED**.

2. Defendant shall file an answer to the complaint by **June 30, 2003**.

**IT IS FURTHER ORDERED** that an initial pretrial conference shall be held on **July 10, 2003** at **10:00 a.m.** in courtroom 3A, U.S. Courthouse, 601 Market Street, Philadelphia, Pennsylvania.

**AND IT IS SO ORDERED.**

*AMENDED ORDER*

**AND NOW,** this **10th** day of **July, 2003,** it is hereby **ORDERED** that the Order of June 18, 2003 is **AMENDED** as follows:

1. Plaintiffs shall file an amended complaint stating a cause of action under the Warsaw Convention by **July 21, 2003.**[1]

none of which are allowed under the treaty's auspices. *See, e.g., Carey v. United Airlines,* 255 F.3d 1044, 1050 (9th Cir.2001) (punitive damages and other non-compensatory awards barred); *Waters v. Port Auth. of New York & New Jersey,* 158 F.Supp.2d 415, 422 (D.N.J. 2001) (finding that plaintiff's claims of negligence and assault and battery were preempted by the Warsaw Convention). To state a claim under the Warsaw Convention, which by its terms applies to "international transportation," a plaintiff must allege that the defendant "air carrier" is "liable for damage sustained in the event of the death or wounding of a passenger or for any other bodily injury suffered by a passenger, [and that] the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Note following 49 U.S.C. § 40105 (setting forth Articles 1 and 17 of the Warsaw Convention). To the extent that the plaintiff alleges that willful misconduct on the part of the air carrier is to blame for his injury, the elements of the particular form of willful misconduct at issue are de-

2. Defendant shall file an answer to the amended complaint by **July 31, 2003.**

**AND IT IS SO ORDERED.**

fined by reference to state law. *See Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1030 (2d Cir.1996).

Anticipating that plaintiffs would seek to file an amended complaint to state causes of action under the Warsaw Convention, the court determined that granting leave to amend under Rule 15(c) would not result in an amended complaint's being untimely filed for purposes of Article 29. Regrettably, the order entered, which required defendant to file an answer, failed to specify that plaintiffs had been granted leave to file a complaint stating a cause of action under the Warsaw Convention as a predicate for the case to continue. Understandably, confusion broke out. To remedy this confusion, the instant order is entered.